AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
MICHAEL RUSSELL PORTER

*Defendant(s)*

Case No. 8:26-mj-3080-CPT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 30, 2026 in the county of Pasco in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 875(c) | Interstate transmission of threats |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Brandon Terry, Special Agent, FBI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: October 7, 2026

[signature]
*Judge's signature*

City and state: Tampa, FL

CHRISTOPHER P. TUITE, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon Terry, being duly sworn, declare and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation (FBI), where I have served since June 06, 2021. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately 5 years. I am currently assigned to the FBI's Tampa Field Office, located in Tampa, Florida. My official duties include, but are not limited to, the investigation of domestic terrorism and related crimes as a member of the Joint Terrorism Task Force ("JTTF"). As a Special Agent, I am a federal law-enforcement officer under applicable provisions of the United States Code and the Federal Rules of Criminal Procedure. I have received training in and have experience in the enforcement of the laws of the United States, including laws related to threats, domestic terrorism, and, among others, conspiracies that involve the use of violence against people and property. Additionally, I have received training in and have experience in making arrests and conducting searches, including searches involving computers, cellular telephones, and other data-storage devices. I have completed hundreds of hours of training in numerous areas of law enforcement investigations and techniques. In the course of my employment as a Special Agent with the FBI, I have received training regarding the application for and execution of both search and arrest warrants. I have received training in assessing and managing individuals who have communicated threats and engaged

in behaviors associated with targeted violence. In my current assignment, I have participated in and conducted investigations involving several different violations of federal law, including threatening communications both locally and interstate or foreign commerce.

2. I am a "federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am engaged in enforcing federal criminal laws and I am authorized by the Attorney General to request an arrest warrant, among other things, for violations of the laws of the United States.

3. This affidavit is made in support of an application for a criminal complaint and arrest warrant for Michael Russell Porter (hereinafter "Porter") for a violation of 18 U.S.C. § 875(c).

4. The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, intelligence analysts, and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I submit only those facts believed to be relevant to the determination of probable cause, and this affidavit should not be construed as a complete statement of all the facts of this investigation. The dates, times, and amounts discussed herein are approximate. Moreover, where the content of records and the actions, statements, and conversations of others are described, they are described in sum and substance and in part, except where otherwise indicated.

## STATUTORY AUTHORITY

5. 18 U.S.C. § 875(c) prohibits a person from "transmit[ing] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."

## PROBABLE CAUSE

6. On or about September 30, 2026, McDonald's customer care call center, telephone number 800-244-6277, received a phone call from phone number 727-645-8191. The McDonald's customer call center who received the call is located in the Philippines, a country outside the United States. The call taker at the call center introduced himself as "Mike" and asked the caller for his name. The caller then made the following statement to the customer care call center employee:

- "Hey Mike, I'm not going to give you my name. I am just calling to tell you this. I see on the news that you are now going to start showing third party ads at your drive-thru windows. I just want you to know, the first time I see that, I'm going into your store with my AR-15 and murdering everybody in the place. You people ought to be ashamed of yourself, you money hungry rat bastards. The first time I see it, there will be gallons of blood. So you can just write that down, and you can tell that to your superiors that I'm sick and tired of you cock sucking billionaires. Not you personally Mike, I'm sure you're a fine person. But nickel diming the fuck out of people while you rape them on a daily basis. And if it happens, the first ad I see, I'm going

in and killing everybody. Thank you very much for your time. You have a pleasant day."

7. The telephone call was recorded.

8. McDonald's intelligence team preliminarily identified the possible owner of phone number 727-645-8191 as Porter with a possible address in Zephyrhills, Florida 33540.

9. On or about October 1, 2026, McDonald's Global Security Director, submitted an online complaint to the FBI's National Threat Operation Center (NTOC). The Security Director provided the FBI with a copy of the recording of the phone call described above made to their customer care call center.

10. Information obtained through an Emergency Disclosure Request (EDR) sent to AT&T relating to phone number 727-645-8191 revealed:

MSISDN: 727-645-8191

MSISDN Active: 07-25-2020 – Current

Name: Michael Porter

User Address: XXXXX 4th Street North, Saint Petersburg, Florida 33716

Payment Type: Prepaid

11. On or about October 4, 2026, Federal Agents interviewed Porter at his residence located in Zephyrhills, Florida. During the interview, Porter stated that he is the user of phone number 727-645-8191 and admitted placing the above referenced call to McDonalds. Porter did not recall making the specific statement

described above but believed he said something regarding that he would, "beat them all to death." Porter did not recall mentioning the use of firearms.

12. Federal Agents interviewed the McDonald's Security Director. During the interview Holm stated that McDonald's perceived the threat as a true threat against their employees and customers. McDonald's then took steps to ensure the safety of their employees and customers, including contacting Florida local law enforcement to request extra patrol officers at their McDonald's locations nearest Porter's residence.

13. During the course of the investigation, Federal Agents learned of a previous incident involving Porter. On or about March 19, 2026, Chick-fil-A called local law enforcement to report a disturbance regarding Porter. Porter became angry when Chick-fil-A informed him that they ran out of tomatoes. During the disturbance, Porter was informed that he was no longer welcome at Chick-fil-A to which Porter stated that he would be back and he will have a shotgun. During contact with Federal Agents on October 4, 2026, Porter admitted to being at Chick-fil-A and having a previous dispute with management.

14. From my training and experience, I know that 18 U.S.C. § 875(c) prohibits the transmitting in interstate or foreign commerce any communication containing any threat to injure the person of another. I also know that to not infringe on the First Amendment, the threat must be a "true threat," which is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstance that would place a reasonable person in fear of being

injured or in fear of another person being injured. Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat; the existence of a threat depends on what the statement conveys to the recipient of the message. Yet, the First Amendment still demands a subjective mental-state of at least recklessness.

## CONCLUSION

15. Based on the foregoing information, I respectfully submit that probable cause exists to believe that Michael Russell Porter knowingly transmitted in interstate or foreign commerce a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c).

Respectfully submitted,

Special Agent Brandon Terry,
Federal Bureau of Investigation

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this 7 day of October, 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge